UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

D-2 JANETTE GAGGO TAWFIK,
D-3 SHELVIE LEWIS AVERY, and
D-5 HAROLD LAWSHAWN NERO,

    Defendants.
_____/

Case No. 17-cr-20183

HON. MARK A. GOLDSMITH

**OPINION & ORDER
DENYING WITHOUT PREJUDICE AVERY'S AND NERO'S MOTIONS IN LIMINE
(Dkts. 381, 386) AND GRANTING IN PART AND DENYING WITHOUT PREJUDICE
IN PART TAWFIK'S MOTION IN LIMINE (Dkt. 383)**

This criminal case involves multiple defendants, all of whom have been charged with involvement in a complex drug- and human-trafficking conspiracy and related crimes at the Victory Inn, a hotel located in Detroit, Michigan. Defendants Janette Gaggo Tawfik, Shelvie Lewis Avery, and Harold Lashawn Nero filed motions in limine seeking to limit law enforcement agents' testimony describing surveillance videos taken at the Victory Inn (Dkts. 381, 383, 386).[1] Additionally, Tawfik seeks the Government's disclosure of transcripts of the audio portions of the video segments it intends to present at trial. The Government has filed a combined response in opposition to the motions (Dkt. 401), to which Tawfik and Nero have replied (Dkts. 406, 407).[2]

---

[1] Defendant Terry Pruitt joins in Tawfik's and Nero's motions, see Pruitt Notice of Joinder (Dkt. 385), and, in addition to filing his own motion, Avery joins in Nero's motion, see Avery Notice of Joinder (Dkt. 387).

[2] Because oral argument will not aid the decisional process, these motions will be decided based on the parties' briefing. See E.D. Mich. LR 7.1(f)(2).

1

For the reasons discussed below, the Court denies without prejudice Defendants' motions to limit law enforcement agents' testimony regarding the surveillance videos. However, it grants Tawfik's request that the Government disclose transcripts of the audio portions of the video segments it intends to introduce at trial. Accordingly, Avery's and Nero's motions are denied without prejudice, and Tawfik's motion is granted in part and denied without prejudice in part.

## I. BACKGROUND

As the Court has previously described the factual background of the case in detail in other opinions, it need not do so again for purposes of the present motion. See, e.g., 7/15/19 Op. (Dkt. 306) (denying Defendant Ford's motion for bond). In relevant part, through the course of its investigation at the Victory Inn, the Government obtained thousands of hours of surveillance video, including footage from the hotel's internal security cameras and pole camera footage from a utility pole located in the hotel's parking lot. Tawfik Mot. at 1; Avery Mot. at 2; Gov't Resp. at 2. The Government provided Defendants with a list of approximately 1,700 potentially inculpatory video segments that it may present at trial. Tawfik Mot. at 1; Avery Mot. at 2–3. Along with these video segments, the Government produced brief notes taken by law enforcement agents that purport to describe the events depicted in each video segment. Tawfik Mot. at 1; Avery Mot. at 3.

In their motions in limine, Defendants seek to limit law enforcement agents' testimony regarding the video. Additionally, Tawfik seeks the Government's disclosure of transcripts of the audio portions of the video segments it intends to present at trial, as well as clarification of the disclosure deadlines for certain other materials.

## II. ANALYSIS

### A. Permissible Testimony

Defendants seek to preclude the Government from presenting two categories of lay opinion testimony under Federal Rule of Evidence 701. First, Tawfik and Nero seek to preclude law enforcement agents from identifying them in the surveillance video. Nero Mot. at 3 (Dkt. 381); Tawfik Reply at 2 (Dkt. 407) (objecting to identification in video taken from cameras other than cameras one and two). Second, Defendants seek to preclude agents from offering any commentary interpreting the events taking place in the video. Nero Mot. at 1, 4; Tawfik Mot. at 203 (Dkt. 383); Avery Mot. at 3–4 (Dkt. 386). The Government, by contrast, maintains that this lay testimony by law enforcement agents is admissible under Rule 701. Gov't Resp. at 3, 6–7.[3]

Rule 701 permits a lay witness to offer opinion testimony where the testimony is "(a) rationally based on the witness's perception, (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." In general, lay opinion testimony is intended to "describe something that the jurors could not otherwise experience for themselves by drawing upon the witness's sensory and experiential observations that were made as a first-hand witness to a particular event." United States v. Freeman, 730 F.3d 590, 595 (6th Cir. 2013) (punctuation

---

[3] The Government argues that law enforcement agents' testimony regarding events taking place in the surveillance video is alternatively admissible as expert testimony under Rule 702. Gov't Resp. at 7–9. Tawfik contends that the Government has not provided notice of its intent to offer expert testimony. Tawfik Reply at 6. Federal Rule of Civil Procedure 16(a)(1)(G) requires the Government, at a defendant's request, to provide a written summary of any expert testimony it intends to introduce during its case-in-chief at trial. If the Government intends to introduce expert testimony, it must comply with the requirements of that rule. But because Defendants' motions concern the admissibility of agents' lay testimony, the Court makes no ruling regarding the admissibility of any expert testimony.

modified). The burden is on the proponent of the lay opinion testimony to establish the foundational requirements of Rule 701. Id. at 595–596.

### 1. Identification Testimony

A witness's lay opinion identifying a defendant in a video or photograph is admissible where "there is some basis for concluding that the witness is more likely to correctly identify the defendant from the photograph than is the jury." United States v. Dixon, 413 F.3d 540, 545 (6th Cir. 2005) (punctuation modified). Whether a witness is more likely than the jury to correctly identify a defendant is determined by reference to the following factors:

> (1) the witness's general level of familiarity with the defendant's appearance; (2) the witness's familiarity with the defendant's appearance at the time the surveillance photograph was taken or when the defendant was dressed in a manner similar to the individual depicted in the photograph; (3) whether the defendant had disguised his appearance at the time of the offense; and (4) whether the defendant had altered his appearance prior to trial.

Id. Additionally, courts frequently consider the quality and clarity of the image, such that "[l]ay opinion identification testimony is more likely to be admissible . . . where the surveillance photograph is of poor or grainy quality, or where it shows only a partial view of the subject." Id.

In United States v. Houston, 813 F.3d 282, 291 (6th Cir. 2016), for example, the Sixth Circuit held that a district court properly admitted a law enforcement agent's testimony identifying the defendant in surveillance video footage. The Sixth Circuit reasoned that the agent became familiar with the defendant's appearance, including his typical dress and mannerisms, by observing him in person before viewing the video. Id. at 292. Additionally, the video quality was poor, as the images became grainy when the zoom function was used. Id. Therefore, the court determined that the agent was better able to identify the defendant than the average juror. Id.

Conversely, the Sixth Circuit held in Dixon that the district court properly excluded testimony from the defendant's son and ex-wife identifying the defendant in a photograph. 413

4

F.3d at 545. While both witnesses were undoubtedly familiar with the defendant's general appearance, there was no evidence demonstrating that they were familiar with his appearance at the time the offense took place. Id. at 545–546. Moreover, the photograph in question was not of particularly poor quality, and it fully depicted the defendant's body from the waist up. Id. at 546. In light of these considerations, the court determined that the testimony would not significantly aid the jury because the witnesses were no better suited than the jurors to make the identification. Id.

Here, the Government maintains that the testifying agents have become familiar with Nero's appearance through their personal review of enormous amounts of surveillance footage, their personal encounters with Nero, and a videotaped interview with Nero. Gov't Resp. at 4–5.[4] Nero, in turn, argues that the agents were unfamiliar with his appearance at the time the video was recorded and only gained familiarity with his appearance after viewing the video. Nero Mot. at 7. Further, he contends that he has not significantly altered his appearance since the time of the offense, and that the video quality is not so poor as to diminish jurors' ability to identify him. Id. Tawfik contends that she is readily identifiable in the video as the only female defendant, thereby obviating the need for testimony by law enforcement. Tawfik Reply at 2.

Because this matter is raised by way of a pretrial motion in limine, with no testimony or foundation to provide context, the Court is unable to independently assess the testifying agents' level of familiarity with Tawfik's and Nero's appearance, the basis for the agents' familiarity, the quality of the video, or the overall ease of identifying Tawfik and Nero from the video. In the absence of such context, the Court is unable to make a blanket determination that any identification

---

[4] The Government did not address the agents' familiarity with Tawfik because she first challenged the admissibility of identification testimony in her reply brief. See Tawfik Reply at 2.

testimony by agents would be improper. The admissibility of such testimony is dependent on the Government laying a proper foundation, as well as establishing the factors set forth in Dixon.

With respect to Nero's argument that identification testimony is inadmissible because agents did not gain familiarity with his appearance until after viewing the surveillance video, this contention lacks merit. Nero has cited no authority—nor is the Court aware of any—requiring officers to be familiar with a defendant before a video is recorded or viewed. Although the Sixth Circuit noted in Houston that the testifying agent became familiar with the defendant's appearance through firsthand observation before the video was recorded, it did not state that this was a requirement. See 813 F.3d at 292. The fact that an officer may not discover a suspect's identity until after viewing a surveillance video does not preclude that officer from accurately identifying the suspect upon re-watching the video.

The Court, therefore, denies without prejudice Tawfik's and Nero's motions in limine to the extent that they seek to preclude agents from identifying them in the surveillance video.

### 2. Commentary on Events

With respect to testimony interpreting recorded events, "[c]ourts often qualify law enforcement officers as expert witnesses under Rule 702 to interpret intercepted conversations that use slang, street language, and the jargon of the illegal drug trade." United States v. Kilpatrick, 798 F.3d 365, 379 (6th Cir. 2015) (punctuation modified). But when an officer is not qualified as an expert, lay opinion is admissible "only when the law enforcement officer is a participant in the conversation, has personal knowledge of the facts being related in the conversation, or observed the conversations as they occurred." Id. (punctuation modified).

In this vein, courts evaluate whether officers' interpretive lay opinions are consistent with Rule 701(a)'s requirement that the testimony be premised on personal perception. Lay opinion

testimony is not permitted where an officer's interpretations are based on the investigating agency's collective knowledge or on the investigation as a whole, rather than on the officer's personal knowledge. See Freeman, 730 F.3d at 596. The personal knowledge requirement ensures that officers' testimony is not premised on hearsay and does not invade the province of the jury:

> We explored the risk that when an agent provides interpretations of recorded conversations based on his knowledge of the entire investigation, the agent could impermissibly testify based upon information not before the jury, including hearsay, and that the jury might think the agent is privy to important knowledge about the case that the jury lacks. The risks are that the agent (1) could effectively smuggle in inadmissible evidence, (2) may draw the kind of inferences that counsel may draw in closing argument, but with the imprimatur of testifying as a law enforcement officer, (3) could usurp the jury's function, or (4) may be doing nothing more than speculating.

Kilpatrick, 798 F.3d at 379–380 (punctuation modified, citation omitted).

However, an officer may provide lay opinion testimony if the Government establishes an adequate foundation that the testimony is premised on the officer's personal experience. For example, the Sixth Circuit held that a district court properly permitted agents to testify regarding their interpretations of text messages where they took active roles in the years-long investigation by interviewing witnesses, reviewing relevant documents and thousands of text messages, and listening to recorded phone calls. Id. at 381. Likewise, the Sixth Circuit upheld a decision permitting an agent to identify suspects' voices and interpret ambiguous phrases in recorded phone calls where that agent had personally listened to intercepted phone calls, watched surveillance videos, and interacted with witnesses and informants. United States v. Williamson, 656 F. App'x 175, 187 (6th Cir. 2016).

Even when an officer's lay opinion is based on personal experience, however, that testimony must also be helpful to the jury under Rule 701(b). In general, lay opinion testimony is helpful within the meaning of Rule 701(b) when the witness has "enjoyed significantly more time

to study and compare the evidence" than the jury. United States v. Shields, 480 F. App'x 381, 387 (6th Cir. 2012) (approving admission of an officer's lay opinion regarding similarities between the tread on the defendant's shoes and a photograph of shoe prints at the crime scene). By contrast, lay opinion testimony is not helpful "when a witness . . . forms conclusions for a jury that the jurors are competent to reach on their own." Kilpatrick, 798 F.3d at 380. Thus, for example, an officer "may not explain to a jury what inferences to draw from recorded conversations involving ordinary language," which would be readily understandable to a juror. Freeman, 730 F.3d at 598. Nor may an officer "merely tell the jury what result to reach" or "effectively spoon-fe[ed] his interpretations of the phone calls and the government's theory of the case to the jury . . . ." Id. Lay opinion witnesses must also avoid expressing a conclusion regarding a defendant's guilt. Kilpatrick, 798 F.3d at 381.

Finally, Rule 701(c) ensures that a lay witness does not offer expert testimony, thereby circumventing the reliability standard for expert testimony set forth in Rule 702. Id. That is, "[i]f the opinion testimony draws on scientific, technical, or other specialized knowledge, then its admissibility should be assessed under Rule 702, not Rule 701." Id.

In their motions, Defendants express their general concern that law enforcement agents will testify regarding their interpretations of the activities taking place in the surveillance video. See Tawfik Mot. at 2–3; Nero Mot. at 3–4; Avery Mot. at 8–9. As noted above, however, in the absence of any testimony or foundation to provide context, the Court is unable to make a comprehensive determination that any commentary on the videos would be improper. At this stage, the Court is unable to assess the degree to which agents' testimony would be premised on their personal experience. Contrary to Tawfik's conclusory argument, it cannot be presumed that "any testifying agent who attempts to offer opinion testimony would be basing it not on his or her

8

own personal perceptions, but rather on the investigation as a whole." See Tawfik Reply at 4. Nor can the Court adequately assess at this stage whether such testimony would be helpful to the jury or would draw on specialized knowledge. Without knowing how the Government intends to elicit agents' testimony, it is impossible to determine whether the Government will call for the agents to opine on matters the jury is competent to resolve. And given that the Court has not heard the audio portions of the surveillance video, it is unable to discern whether the portions involving Tawfik are "in plain English," as she maintains, or whether they require some interpretation. See id. at 2. Again, the admissibility of such testimony depends on whether the Government lays a proper foundation.

Tawfik additionally argues that only a small fraction of conversations recorded on the surveillance videos will be presented at trial. Id. at 2–3. She objects to the possibility that law enforcement agents' interpretations of those conversations may impermissibly reference their knowledge of other conversations not offered into evidence. Id. at 3. In Freeman, the Sixth Circuit held inadmissible an agent's testimony interpreting conversations captured in 77 recorded conversations presented at trial, based on his review of 23,000 total recorded calls. 730 F.3d at 597. The court reasoned that the agent infringed on the role of the jury by drawing conclusions from the phone calls the jury heard, as well as from thousands of other phone calls and evidence not presented to the jury. Id. at 598. But the court recognized that other circuits have permitted agents to interpret cryptic language in phone calls based on their personal knowledge of other calls not in evidence. Id. For example, the Seventh Circuit permitted an agent to offer lay opinion interpretations of code words used in recorded conversations admitted at trial, based on his personal knowledge of the meaning of those words gained through his review of thousands of other, unadmitted calls. Id. (citing United States v. Rollins, 544 F.3d 820, 832 (7th Cir. 2008)).

9

The Sixth Circuit distinguished Rollins, holding that the agent's testimony in Freeman was inadmissible because it interpreted not only code words but also ordinary language. Id.

More recently, the Sixth Circuit appears to have embraced the outcome reached in Rollins. In Kilpatrick, the Sixth Circuit permitted agents to testify regarding their interpretations of approximately 150 cryptic text messages admitted during trial based on their review of over 300,000 unadmitted text messages and thousands of records. Kilpatrick, 798 F.3d at 383. The district court held that many of the admitted text messages "were highly relevant to the jury's understanding of the facts . . . but were so cryptic they often could only be understood from the context of other messages, records, and events that took place at the same time." Id. at 377 (punctuation modified). In apparent agreement, the Sixth Circuit reasoned that the agents' references to "surrounding text messages" in interpreting the ambiguous statements were admissible under Rule 1006. Id. at 383. That rule permits witnesses to summarize voluminous records, provided that the opposing party had access to those records and could challenge the accuracy of the summary testimony through cross-examination. Id.

In view of this authority, officers are permitted to interpret cryptic conversations and messages by reference to their personal knowledge of background information learned through the investigation. Thus, as stated above, the Court is unable to make a blanket ruling that agents are barred from referencing their knowledge of information not introduced into evidence. Again, the admissibility of such testimony would be dependent on the Government establishing a proper foundation.

The Court, therefore, denies without prejudice Defendants' motions in limine to the extent that they seek to preclude agents from commenting on the surveillance video.

### B. Transcripts of Surveillance Video

In Tawfik's motion, she notes that the Government has indicated its intent to introduce transcripts of the audio portions of the surveillance videos it will present at trial. Tawfik Mot. at 1. While Tawfik does not object to the Government's use of transcripts during trial, she seeks disclosure of those transcripts at least 120 days before trial to ensure the defense has an adequate opportunity to review them for accuracy. Id. at 1–2. The Government did not address Tawfik's request in its response to her motion.

Whether a jury may use a transcript of a recording follows no bright-line rule. United States v. Norwood, No. 12-20287, 2014 WL 1818174, at *1 (E.D. Mich. May 7, 2014). Courts have discretion to allow a jury to use a transcript if the related recording is "authentic, accurate and trustworthy." United States v. Robinson, 707 F.2d 872, 876 (6th Cir. 1983). In determining whether to allow juror use of a transcript, courts look to a variety of factors, including whether the audio recording "is clear enough for a juror to detect that the [recording] is at variance with the transcript," id. at 878, and whether the transcripts will create juror confusion, United States v. Davis, No. 02-20049-BC, 2003 WL 21919471, at *2 (E.D. Mich. Aug. 8, 2003). The Sixth Circuit has set forth the following procedures for ensuring that transcripts are accurate:

> The ideal procedure for testing accuracy is to have the prosecution and defense attorneys stipulate to a transcript. If there is a dispute concerning the contents of the tape, the second best method is for the trial court to make a pretrial determination of accuracy by reading the transcript against the tapes. The third and least preferred method is to present two transcripts to the jury, one of which contains the government's version and the other the defense's version. Hence, the jury becomes the final arbiter of which version is most accurate.

Robinson, 707 F.2d at 876 (punctuation modified, citation omitted); see also United States v. Segines, 17 F.3d 847, 854 (6th Cir. 1994).

These authorities counsel that the parties should first endeavor to stipulate to the accuracy of the proposed transcripts, in whole or in part, once they are circulated. In another complex conspiracy case, this Court directed the Government to disclose the final versions of transcripts it intended to use at trial approximately 60 days before trial began. 3/17/14 Order, United States v. Norwood, No. 12-20287 (Dkt. 408). But because the trial in this action is anticipated to be more complex and involve significantly more recordings than the trial in Norwood, an earlier disclosure of the transcripts is appropriate.

The Government is to disclose the relevant transcripts 120 days before trial. After disclosure is made, the parties shall confer and attempt to stipulate to the transcripts' contents, in whole or in part. Defendants shall file a memorandum specifically objecting to portions of the transcripts for inaccuracy, unintelligibility, or otherwise, no later than 60 days before trial. Defendants shall attach the relevant transcripts as an exhibit to their memorandum and indicate the portions to which they object. The Court strongly encourages Defendants to file a joint memorandum to the extent possible. The Government shall file a responsive memorandum 14 days after Defendants serve their memorandum. The Government shall also submit copies of the relevant recordings.

**C. Other Disclosures**

Finally, Tawfik's motion seeks clarification regarding the disclosure deadlines for the Government's production of Rule 16 materials, witness lists, Brady materials, and Jencks Act materials. Tawfik Mot. at 3. As set forth in the Court's most recent schedule, Rule 16 materials not covered by the Jencks Act are to be disclosed by May 27, 2021; witness lists are to be disclosed by July 6, 2021; and Brady materials not covered by the Jencks Act are to be disclosed by August

5, 2021.  See 2/17/21 Stipulation & Order (Dkt. 564); 3/1/21 Op. at 6 (Dkt. 569).  Jencks Act materials are to be disclosed one week before trial begins.  See 7/31/19 Op. at 5 n.5 (Dkt. 307).

### III.  CONCLUSION

For the reasons stated above, Avery's and Nero's motions are denied without prejudice (Dkts. 381, 386), and Tawfik's motion is granted in part and denied without prejudice in part (Dkt. 383).

SO ORDERED.

Dated:  April 29, 2021　　　　　　　　　　　　　　s/Mark A. Goldsmith
　　　　Detroit, Michigan　　　　　　　　　　　　　MARK A. GOLDSMITH
　　　　　　　　　　　　　　　　　　　　　　　　　United States District Judge