<table>
<tr><td>United States District Court<br>Eastern District of Michigan<br>Southern Division</td><td></td></tr>
</table>

United States of America,

        Plaintiff,

v.

D-3 Shelvie Lewis Avery,

        Defendant.

_____/

Hon. Mark A. Goldsmith

Case No. 17-20183

### Plea Agreement

The United States of America and the defendant, Shelvie Lewis Avery, have reached a plea agreement under Federal Rule of Criminal Procedure 11. The plea agreement's terms are:

**1.  Counts of Conviction**

The defendant will plead guilty to Count 1 and Count 11 of the Superseding Indictment. Count 1 charges the defendant with conspiracy to commit sex trafficking by force, fraud, and coercion, under 18 U.S.C. §§ 1594(c) and 1591(b)(1). Count 11 charges the defendant with conspiracy to distribute a controlled substance under 21 U.S.C. §§ 846 and 841(a)(1). The defendant also agrees that before he committed these offenses, he had been convicted of a serious drug felony as defined in 21 U.S.C. § 802(57).

**2.     Statutory Minimum and Maximum Penalties**

The defendant understands that the counts to which he is pleading guilty carry

the following minimum and maximum statutory penalties:

| Count 1 | Term of imprisonment: | Up to life imprisonment |
|---|---|---|
| | Fine: | Up to $250,000 |
| | Term of supervised release: | Up to 5 years |
| Count 11 | Term of imprisonment: | Not less than 15 years and up to life imprisonment |
| | Fine: | Up to $20,000,000 |
| | Term of supervised release: | At least 10 years up to life |

The defendant further understands that the Court has the discretion to run the

sentences of imprisonment on the counts of conviction consecutively to each other.

The defendant understands that Count 11 requires a mandatory minimum

sentence of 180 months' imprisonment, and that the Court may not impose a

sentence on this count below the mandatory minimum.

**3.     Agreement to Dismiss Remaining Charges**

If the Court accepts this agreement and imposes a sentence consistent with its

terms, the United States Attorney's Office for the Eastern District of Michigan will

move to dismiss any remaining charges in the indictment against the defendant in

this case. Specifically, the United States Attorney's Office will move to dismiss the

following charges that remain: Counts Three through Eight – sex trafficking by

force, fraud, and coercion, aiding and abetting; Count 16 - distribution of a controlled substance resulting in death; and Count 18 - maintaining a drug involved premises, aiding and abetting.

**4.     Agreement Not to Bring Additional Charges**

If the Court accepts this agreement and imposes a sentence consistent with its terms, the United States Attorney's Office for the Eastern District of Michigan will not bring additional charges against the defendant for the conduct reflected in the Superseding Indictment.

**5.     Elements of Counts of Conviction**

<u>The elements of Count 1 are</u>:

1.     Two or more person conspired, or agreed, to commit the crime of sex trafficking by force, fraud, or coercion, in violation of 18 U.S.C. §§ 1591(a)(1) and (b)(1). The elements of sex trafficking by force, fraud, or coercion are:

     a.    The defendant knowingly recruited, enticed, harbored, transported, provided, obtained, maintained, patronized, and/or solicited a person or persons;

     b.    The defendant knew that force, threats of force, fraud, or coercion, or any combination of such means, would be used to cause the person to engage in a commercial sex act; and;

c.    The sex trafficking affected interstate or foreign commerce; and,

2.    The defendant knowingly and voluntarily joined the conspiracy.

<u>The elements of Count 11 are</u>:

1.    That two or more persons conspired, or agreed, distribute controlled substances;

2.    That the defendant knowingly and voluntarily joined the conspiracy;

3.    The conspiracy involved at least 280 grams of a substance containing a detectable amount of cocaine base, and at least 100 grams or more of a substance containing a detectable amount of heroin, that was attributable to defendant as the result of his own conduct and the conduct of other coconspirators that was reasonably foreseeable to him.

**6.**    **Factual Basis**

The parties agree that the following facts are true, accurately describe the defendant's role in the offenses, and provide a sufficient factual basis for the defendant's guilty plea:

**Count 1**

From in or around 2016 through January 2017, the defendant conspired and agreed with others to run a prostitution enterprise at the Victory Inn hotel on Michigan Avenue, in Detroit, Michigan (the Victory Inn), located in the Eastern

District of Michigan. The conspirators agreed to recruit, entice, harbor, transport, provide, obtain, maintain, and solicit women, addicted to controlled substances knowing that force and coercion would be used to cause the women to perform commercial sex acts. These women were willing to go to great lengths to finance their drug habits to stave off the physical and mental suffering caused by the consequences of withdrawal. By exploiting their addiction to controlled substances, members of the conspiracy coerced the women to engage in commercial sex acts as defined in 18 U.S.C. 1591(e)(3). The conspirators also used violence and/or threats of violence to force women to engage in commercial sex acts. Defendant participated in this conspiracy, knowing its nature and purpose.

Members of the conspiracy controlled these women by giving them heroin, crack cocaine, and other controlled substances. The members of the conspiracy, including the defendant, required the women to purchase drugs from a coconspirator. The coconspirator oftentimes provided the drugs on credit. This allowed the women to obtain drugs despite having no money. The drugs were readily accepted by the women. Soon thereafter, the women would hastily return for additional drugs. The members of the conspiracy would then restrict or cut off access to the controlled substances. By this means, members of the conspiracy, including the defendant, knowingly put the women on the edge of being "dope sick".

The term "dope sick" refers to the physical and mental symptoms of withdrawal from controlled substances. Dope sickness may include, but is not

limited to, intense body aches, vomiting, diarrhea, night sweats, and/or uncontrolled defecation. The effects were so bad, and the women were so frightened of getting dope sick, that members of the conspiracy could leverage the women's fears of getting dope sick to coerce them to engage in commercial sex acts. Having no money and no other way to stave off dope sickness, the women would participate in a commercial sex act, give the money to a coconspirator, and receive their controlled substances.

Members of the conspiracy also used violence or the threat of violence to force the women to engage in commercial sex acts. Having accrued a drug debt, some members of the conspiracy gave the women hours to pay off their drug debt. Others wanted their money by the end of the day. Either way, the women would have to pay off the debt or become a victim of a physical assault or fear an impending assault based on threats, made by coconspirators, of a physical assault. Having no money and no other source of income, the women would have to engage in commercial sex acts to earn money as quickly as possible to avoid physical harm. Many of the women witnessed members of the conspiracy, including the defendant, assault and injure other women who failed to pay their debt, purchased drugs from someone outside the conspiracy, or failed to earn enough money for the conspiracy. This taught the women that the members of the conspiracy were not making idle threats.

In some cases, coconspirators, including the defendant, took all the money that the women received for the commercial sex acts and in turn gave them a quantity

of controlled substances at an exchange or pricing rate that the conspirators determined. For example, a coconspirator gave a woman a $10 bag of crack (cocaine base) but charged her $20. This would immediately put the woman in debt and compel them to conduct another commercial sex act for fear of a physical assault or dope sickness. This cycle would continue open-endedly: the debt would grow, the women would engage in more commercial sex acts, and the conspirators would make more money.

Many of the women lived at or spent most of their days at or around the Victory Inn. The defendant, his coconspirators, and others, provided hotel rooms at the Victory Inn to the women. Many of the women relied on these hotel rooms for shelter. Some members of the conspiracy charged the women to use these rooms for commercial sex dates. They knew that the money earned from the commercial sex date would circle back to the members of the conspiracy. The women inevitably used the money earned from the commercial sex act to purchase more drugs from the members of the conspiracy. Additionally, if a woman failed to repay her drug debt, members of the conspiracy could threaten to throw her out of their room (with or without physical force) or the Victory Inn, rendering her homeless.

The sex trafficking conspiracy affected interstate or foreign commerce. First, the conspiracy's members advertised the women on the internet, a means and facility of interstate and foreign commerce. The women were advertised on www.backpage.com, an internet advertisement service based in Arizona. The

advertisements made clear that the women were available for acts of prostitution in particular areas, and included contact information such as cellular phone numbers to set up "dates." Second, the Victory Inn is a hotel chain with hotels outside of the state of Michigan, including Arizona.

**Count 11**

From in our around 2016 through January 2017, the defendant knowingly and intentionally conspired and agreed with others to possess with the intent to distribute and distribute cocaine base, a Schedule II controlled substance, and heroin, a Schedule I controlled substance, at the Victory Inn hotel on Michigan Avenue, in Detroit, Michigan (the Victory Inn), located in the Eastern District of Michigan. The defendant acted as a manager or supervisor, but not an organizer or leader, in the extensive drug-trafficking conspiracy that involved more than five participants.

Other members acted in various capacities, including acting as lookouts, to further the objectives of the drug-trafficking conspiracy, and the actual distribution and protection of illegal narcotics and drug proceeds. Members participated in meetings at the Victory Inn to coordinate their illegal narcotic and other activities at the Victory Inn. Conspirators delivered cocaine, cocaine base, and heroin to the Victory Inn. Conspirators, including the defendant, used rooms at the Victory Inn to conduct their organized narcotic distribution activities. They occupied, managed, rented, and leased the rooms they controlled. Their control of the rooms was, in part, for the purpose of manufacturing, distributing, and using controlled substances.

Conspirators also processed cocaine into cocaine base in rooms at the Victory Inn. Conspirators, including the defendant, possessed with the intent to distribute and did distribute high volumes of cocaine base and heroin to customers, and allowed customers to use those illegal narcotics within various rooms at the Victory Inn.

It was part of the conspiracy that conspirators used internal hotel video surveillance and human lookouts at the Victory Inn to monitor the organized narcotic-distribution activities at the Victory Inn. As part of the drug-trafficking (and human-trafficking conspiracy), the defendant used violence, made a credible threat to use violence, or directed the use of violence against human-trafficking victims.

It was part of the conspiracy that some members of the conspiracy possessed, used, and carried firearms to further their illegal activities at the Victory Inn, including on January 12, 2017, when an unindicted co-conspirator possessed a loaded .38 revolver to protect illegal narcotics at the Victory Inn. Members of the conspiracy, including the defendant, individually or jointly possessed and had access to one or more firearms for protection of their illegal narcotics at the Victory Inn.

During the course and in furtherance of the conspiracy, the defendant was personally involved in the distribution of, or it was reasonably foreseeable to the defendant that the defendant's co-conspirators distributed at least 840 grams of cocaine base and at least 100 grams of heroin.

**Serious Drug Felony**

The defendant agrees that before he committed the offense charged in Count 11, he had a final conviction for a serious drug felony, specifically, felony controlled substance – delivery/manufacture cocaine, heroin, or another narcotic less than 50 grams, in case number 01-010546-01, in the Third Judicial Circuit Court, Wayne County, Michigan, for which he served more than 12 months of imprisonment and for which he was released from serving any term of imprisonment related to that offense within 15 years of the commencement of the instant offense.

7.   **Advice of Rights**

The defendant has read the Superseding Indictment, has discussed the charges and possible defenses with his attorney, and understands the crimes charged. The defendant understands that, by pleading guilty, he is waiving many important rights, including the following:

A.   The right to plead not guilty and to persist in that plea;

B.   The right to a speedy and public trial by jury;

C.   The right to the assistance of an attorney at every critical stage of the proceedings, including trial;

D.   The right to an appointed attorney, if the defendant cannot afford to retain one;

E.   The right to be presumed innocent and to require the government to prove the defendant guilty beyond a reasonable doubt at trial;

F.  The right to confront and cross-examine adverse witnesses at trial;

G.  The right to testify or not to testify at trial, whichever the defendant chooses;

H.  If the defendant chooses not to testify, the right to have the jury informed that it may not treat that choice as evidence of guilt;

I.  The right to present evidence or not to present evidence at trial, whichever the defendant chooses; and

J.  The right to compel the attendance of witnesses at trial.

## 8.  Collateral Consequences of Conviction

The defendant understands that his convictions here may carry additional consequences under federal or state law. The defendant understands that, if he is not a United States citizen, his convictions here may require him to be removed from the United States, denied citizenship, and denied admission to the United States in the future. The defendant further understands that the additional consequences of his convictions here may include, but are not limited to, adverse effects on the defendant's immigration status, naturalized citizenship, right to vote, right to carry a firearm, right to serve on a jury, and ability to hold certain licenses or to be employed in certain fields. The defendant understands that no one, including the defendant's attorney or the Court, can predict to a certainty what the additional consequences of the defendant's convictions might be. The defendant nevertheless

affirms that the defendant chooses to plead guilty regardless of any immigration or other consequences from his convictions.

9.   **Defendant's Guideline Range**

   A.   **Court's Determination**

   The Court will determine the defendant's guideline range at sentencing.

   B.   **Acceptance of Responsibility**

   The government recommends under Federal Rule of Criminal Procedure 11(c)(1)(B) that the defendant receive a two-level reduction for acceptance of responsibility under USSG § 3E1.1(a) for the guideline calculation on Counts 1 and 11. Further, if the defendant's offense level is 16 or greater and the defendant is awarded the two-level reduction under USSG § 3E1.1(a), the government recommends that the defendant receive an additional one-level reduction for acceptance of responsibility under USSG § 3E1.1(b). If, however, the government learns that the defendant has engaged in any conduct inconsistent with acceptance of responsibility—including, but not limited to, making any false statement to, or withholding information from, his probation officer; obstructing justice in any way; denying his guilt on the offenses to which he is pleading guilty; committing additional crimes after pleading guilty; or otherwise demonstrating a lack of acceptance of responsibility as defined in USSG § 3E1.1—the government will be released from its obligations under this paragraph, will be free to argue that the defendant not receive *any* reduction for acceptance of responsibility under USSG

§ 3E1.1, and will be free to argue that the defendant receive an enhancement for obstruction of justice under USSG § 3C1.1.

### C.   Other Guideline Recommendations

The parties also recommend under Federal Rule of Criminal Procedure 11(c)(1)(B) that the following guideline provisions apply to the defendant's guideline calculations:

**Count 1**

| Guideline | Description | Level |
|---|---|---|
| 2G1.1(a)(1) | Base offense level for sex trafficking | 34 |
| 3A1.1(b)(1) and (2) | Victim-related adjustments: defendant knew or should have known that a victim of the offense was a vulnerable victim, and the offense involved a large number of vulnerable victims | 4 |
| 3B1.1(b) | Role in the offense adjustment: the defendant was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive | 3 |
| | **Adjusted offense level** | **41** |

**Count 11**

| Guideline | Description | Level |
|---|---|---|
| 2D1.1 | At least 840 grams but less than 2.8 kilograms cocaine base and at least 100 grams of heroin | 32 |
| 2D1.1(b)(1) | A dangerous weapon was possessed | 2 |
| 2D1.1(b)(2) | Used violence, made a credible threat to use violence, or directed the use of violence | 2 |
| 2D1.1(b)(12) | Maintained a premises for purpose of distributing controlled substance | 2 |

| | | |
|---|---|---|
| 2D1.1(b)(16)(A)&(E) | Aggravating role with vulnerable individual and part of a pattern of criminal acts as a livelihood | 2 |
| 3B1.1(b) | Role in the offense adjustment: the defendant was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive | 3 |
| | **Adjusted offense level** | **43** |

### Multiple counts

| Guideline | Description | Level increase |
|---|---|---|
| 3D1.2(a)-(d) | Multiple counts | 2 |
| | §2G1.1 is specifically excluded from grouping | |
| | **Combined adjusted offense level** | **45** |

### D.    Parties' Obligations

Both the defendant and the government agree not to take any position or make any statement that is inconsistent with any of the guideline recommendations or factual stipulations in paragraphs 9.B, 9.C, or 9.D. Other than the guideline recommendations and factual stipulations in those paragraphs, however, neither party is restricted in what it may argue or present to the Court as to the defendant's guideline calculation.

### E.    Not a Basis to Withdraw

The defendant understands that he will have no right to withdraw from this agreement or withdraw his guilty plea if he disagrees, in any way, with the guideline range determined by the Court, even if that guideline range does not incorporate the parties' recommendations or factual stipulations in paragraphs 9.B, 9.C, or 9.D. The

government likewise has no right to withdraw from this agreement if it disagrees with the guideline range determined by the Court.

**10.    Imposition of Sentence**

   **A.    Court's Obligation**

The defendant understands that in determining his sentence, the Court must calculate the applicable guideline range at sentencing and must consider that range, any possible departures under the sentencing guidelines, and the sentencing factors listed in 18 U.S.C. § 3553(a), and apply any applicable mandatory minimums.

   **B.    Imprisonment**

      **1.    Agreement**

Under Federal Rule of Criminal Procedure 11(c)(1)(C), the parties agree that the defendant's sentence of imprisonment shall be 228 months (19 years).

The government agrees to recommend, at sentencing, that the Court recommend that the Bureau of Prisons designate the defendant to a Federal Medical Facility. The government's recommendation as to the defendant's designation within the Bureau of Prisons is not binding on the Court. The defendant understands that he will have no right to withdraw from this agreement or withdraw his guilty plea if the Court decides not to follow the government's recommendation. The defendant also understands that the Court cannot order the Bureau of Prisons to designate him to a particular or type of facility. If the Court recommends a designation to a Federal Medical Center, and the Bureau of Prisons does not follow

the Court's recommendation, the defendant understands that he will have no right to withdraw from this agreement or withdraw his guilty plea.

### 2.    Limited Right to Withdraw

If the Court rejects the agreement by deciding to impose a sentence of imprisonment higher than permitted by paragraph 10.B.1, the defendant will be permitted to withdraw his guilty plea. That is the only reason the defendant may withdraw his guilty plea. If the defendant decides not to withdraw his guilty plea in those circumstances, the defendant agrees that the Court may impose a sentence higher than permitted by paragraph 10.B.1 and that all other provisions in this agreement will remain in effect.

If the Court rejects the plea agreement by deciding to impose a sentence of imprisonment lower than permitted by paragraph 10.B.1, or by rejecting or purporting to reject any other term or terms of this agreement, the government will be permitted to withdraw from this agreement.

### C.    Supervised Release

### 1.    Recommendation

Under Federal Rule of Criminal Procedure 11(c)(1)(B), the parties recommend that the Court impose a 10 year term of supervised release.

### 2.    No Right to Withdraw

The parties' recommendation is not binding on the Court. The defendant understands that he will have no right to withdraw from this agreement or withdraw

his guilty plea if the Court decides not to follow the parties' recommendation. The defendant also understands that the government's agreement concerning the length of the defendant's sentence of imprisonment, as described above in paragraph 10.B.1, will not apply to or limit any term of imprisonment that results from any later revocation of the defendant's supervised release.

**D.      Fines**

There is no recommendation or agreement as to a fine.

**E.      Restitution**

The Court must order restitution to every identifiable victim of the defendant's offense. There is no recommendation or agreement on restitution. The Court will determine at sentencing who the victims are and the amounts of restitution they are owed.

The defendant agrees that restitution is due and payable immediately after the judgment is entered and is subject to immediate enforcement, in full, by the United States. 18 U.S.C. §§ 3612(c) and 3613. If the Court imposes a schedule of payments, the defendant agrees that the schedule of payments is a schedule of the minimum payment due, and that the payment schedule does not prohibit or limit the methods by which the United States may immediately enforce the judgment in full.

The defendant agrees to make a full presentence disclosure of his financial status to the United States Attorney's Office by completing a Financial Disclosure Form and the accompanying releases for the purpose of determining his ability to

pay restitution. The defendant agrees to complete and return the Financial Disclosure Form within three weeks of receiving it from government counsel. The defendant agrees to participate in a presentencing debtor's examination if requested to do so by government counsel.

### G.    Special Assessment

The defendant understands that he will be required to pay a special assessment of $200, due immediately upon sentencing.

Under the Justice for Victims of Trafficking Act of 2015, the defendant may be required pay a special assessment of $5,000, due immediately upon sentencing. However, if the Court finds that the defendant is indigent, he will not be ordered to pay this amount.

### 11.    SORNA

The defendant understands that by pleading guilty in this case, he will be required to register as a sex offender, under both federal and state registration requirements. As a condition of his release from prison on supervised release in this case, the defendant will be obligated to promptly register under the federal sex offender registry. The defendant may also be required to register under the law of the state in which he resides, as well as any state where he has significant contacts (including any state where he resides, works, attends school or otherwise has significant contacts). The defendant further understands that he will be required to

maintain and update his registration for at least twenty years, and potentially for the rest of his life.

**12.    Appeal Waiver**

The defendant waives any right he may have to appeal his conviction on any grounds. If the defendant's sentence of imprisonment does not exceed 228 months, the defendant also waives any right he may have to appeal his sentence on any grounds.

**13.    Collateral Review Waiver**

The defendant retains the right to raise claims alleging ineffective assistance of counsel or prosecutorial misconduct, as long as the defendant properly raises those claims by collateral review under 28 U.S.C. § 2255. The defendant also retains the right to pursue any relief permitted under 18 U.S.C. § 3582(c), as long as the defendant properly files a motion under that section. The defendant, however, waives any other right he may have to challenge his conviction or sentence by collateral review, including, but not limited to, any right he may have to challenge his conviction or sentence on any grounds under 28 U.S.C. § 2255 (except for properly raised ineffective assistance of counsel or prosecutorial misconduct claims, as described above), 28 U.S.C. § 2241, or Federal Rule of Civil Procedure 59 or 60.

**14.    Consequences of Withdrawal of Guilty Plea or Vacation of Judgment**

If the defendant is allowed to withdraw his guilty pleas, or if the defendant's conviction or sentence under this agreement is vacated, the government may

reinstate any charges against the defendant that were dismissed as part of this agreement and may file additional charges against the defendant relating, directly or indirectly, to any of the conduct underlying the defendant's guilty plea or any relevant conduct. If the government reinstates any charges or files any additional charges as permitted by this paragraph, the defendant waives his right to challenge those charges on the ground that they were not filed in a timely manner, including any claim that they were filed after the limitations period expired.

**15.  Use of Withdrawn Guilty Plea**

The defendant agrees that if he is permitted to withdraw his guilty plea for any reason, he waives all of his rights under Federal Rule of Evidence 410, and the government may use his guilty plea, any statement that the defendant made at his guilty plea hearing, and the factual basis set forth in this agreement, against the defendant in any proceeding.

**16.  Parties to Plea Agreement**

This agreement does not bind any government agency except the United States Attorney's Office for the Eastern District of Michigan.

**17.  Scope of Plea Agreement**

This plea agreement is the complete agreement between the parties and supersedes any other promises, representations, understandings, or agreements between the parties concerning the subject matter of this agreement that were made at any time before the guilty plea is entered in court. Thus, no oral or written

promises made by the government to the defendant or to the attorney for the defendant at any time before the defendant pleads guilty are binding except to the extent they have been explicitly incorporated into this plea agreement. If the parties have entered, or subsequently enter, into a written proffer or cooperation agreement, though, this plea agreement does not supersede or abrogate the terms of that agreement. This plea agreement also does not prevent any civil or administrative actions against the defendant, or any forfeiture claim against any property, by the United States or any other party.

18.    **Acceptance of Agreement by Defendant**

The government may withdraw from this agreement at any time before the

defendant pleads guilty.

SAIMA S. MOHSIN
Acting United States Attorney

s/Craig Wininger                                  s/Matthew Roth
Craig Wininger                                    Matthew Roth.
Chief, Violent and Organized Crime Unit           Assistant United States Attorney
Assistant United States Attorney                  211 West Fort Street, Suite 2001
211 West Fort Street, Suite 2001                  Detroit, Michigan 48226
Detroit, Michigan 48226

s/Lisandra Fernandez Silber                       s/Blake Hatlem
Lisandra Fernandez-Silber                         Blake Hatlem
Assistant United States Attorney                  Assistant United States Attorney
211 West Fort Street, Suite 2001                  211 West Fort Street, Suite 2001
Detroit, Michigan 48226                           Detroit, Michigan 48226

Dated:  September 14, 2021

By signing below, the defendant and his attorney agree that the defendant has

read or been read this entire document, has discussed it with his attorney, and has

had a full and complete opportunity to confer with his attorney. The defendant

further agrees that he understands this entire document, agrees to its terms, has had

all of his questions answered by his attorney, and is satisfied with his attorney's

advice and representation.

Richard H. Morgan Jr.                             Shelvie Lewis Avery
Attorney for Defendant                            Defendant

Dated:  9/14/2021